UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RONALD HACKER, *et al.*, | ) | CASE NO. 1:24-CV-00341 |
| | ) | |
| Plaintiffs, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | |
| | ) | |
| ARCELORMITTAL TUBULAR | ) | **MEMORANDUM OPINION** |
| PRODUCTS USA LLC, *et al.*, | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

Before the Court is Defendants' Motion to Dismiss. (Doc. 14.) Plaintiffs opposed (Doc. 17), and Defendants timely replied (Doc. 19). Relatedly, Plaintiffs' move to strike an affidavit Defendants submitted in support of their Motion to Dismiss. (Docs. 22-24.) For the reasons set forth below, the motion to strike is GRANTED, and the motion to dismiss is GRANTED in part and DENIED in part.

I. BACKGROUND

A. Factual Allegations

In this ERISA action, Plaintiffs Ronald and Jinny Hacker (separately, "Mr. Hacker" and "Mrs. Hacker" and together "Plaintiffs") allege Mr. Hacker's employer, ArcelorMittal Tubular Products USA LLC ("ArcelorMittal"), improperly terminated his medical benefits when his stage four cancer treatments necessitated extended absences from work.

As a benefit of employment, ArcelorMittal provides eligible employees the opportunity to participate in the ArcelorMittal Tubular Products USA Corporation Welfare Benefit Plan No. 508 (the "Benefit Plan"). (Doc. 16-1 at ¶ 10.) The Benefit Plan is administered pursuant to the Employee Retirement Income Security Act ("ERISA"). (*Id.*) The Benefit Plan is administered

by the Benefits Administration Committee of ArcelorMittal Tubular Products Plan No. 508 ("Benefits Committee"), if the Benefits Committee exists. (*Id.* ¶ 4.)

In part, the Benefit Plan provides medical benefits to employees and dependents. (*Id.* ¶ 10.) Mr. Hacker was eligible for and participated in the Benefit Plan. (*Id.* ¶¶ 9, 11.) Mrs. Hacker participated in the Benefit Plan as an eligible dependent. (*Id.* ¶ 12.) On November 2, 2020, Mr. Hacker injured his hand and wrist at work. (*Id.* ¶ 16.) Mr. Hacker applied for short-term disability benefits and filed a worker's compensation claim. (*Id.* ¶ 17.) Mr. Hacker did not work while the worker's compensation claim was being adjudicated. (*Id.*)

In February 2021, while Mr. Hacker continued to treat his injury, he was diagnosed with stage four cancer. (*Id.* ¶ 18.) He immediately began treatment, which included several surgeries and procedures. (*Id.* ¶ 19.) His cancer treatment continued throughout 2022. (*Id.* ¶ 20.) On October 27, 2022, Mr. Hacker communicated with ArcelorMittal human resource representatives regarding additional short-term disability. (*Id.* ¶ 21.) During this call, a representative questioned Mr. Hacker's status as an eligible participant of the Benefit Plan because of his long absence from work. (*Id.* ¶ 22.) Soon thereafter, on November 6, 2022, Mr. Hacker attempted to refill a prescription, but the pharmacy told him the medical coverage was terminated. (*Id.* ¶ 24.) Plaintiffs allege they never received notice their medical coverage was terminated nor were they given a reason for termination. (*Id.* ¶ 26.) Plaintiffs also allege neither received a notice pursuant to the Consolidated Omnibus Budget Reconciliation Act, familiarly known as a "COBRA notice." (*Id.* ¶ 27.)

After Plaintiffs retained counsel, their attorney requested ArcelorMittal provide an explanation for the termination of benefits. (*Id.* ¶¶ 29-30.) After delay, ArcelorMittal provided a Benefit Plan Document effective as of January 1, 2011, a document titled "2022 Benefits

Highlights," and excerpts from a third document. (*Id.* ¶ 31.) Additionally, ArcelorMittal provided Plaintiffs' counsel with a COBRA notice purportedly sent to Plaintiffs on or about November 23, 2022. (*Id.* ¶ 32.) The COBRA notice stated coverage was terminated on October 31, 2022, because ArcelorMittal terminated Mr. Hacker's employment. (*Id.* ¶ 33.)

B.  **Procedural History**

Plaintiffs filed their complaint on February 23, 2025. (Doc. 1.) The complaint named three defendants: (1) ArcelorMittal; (2) the Benefits Committee; and (3) Highmark Blue Cross Blue Shield. The complaint included six claims: (1) violation of ERISA for failure to provide notice of adverse benefits determination (against all Defendants); (2) wrongful termination of healthcare coverage (against all Defendants); (3) discrimination under ERISA Section 510 (against ArcelorMittal); (4) failure to provide COBRA notice to Mr. Hacker under ERISA (against ArcelorMittal and/or Benefits Committee); (5) failure to provide COBRA notice to Mrs. Hacker under ERISA (against ArcelorMittal and/or Benefits Committee); and (6) violation of ERISA for a deficient Summary Plan Description ("SPD") (against ArcelorMittal and/or Benefits Committee).

On May 31, 2024, Defendants moved to dismiss the complaint. (Doc. 14.) On June 28, 2024, Plaintiffs filed their opposition (Doc. 17), and on July 12, 2024, Defendants timely replied (Doc. 19). Before filing their opposition, on June 26, 2024, Plaintiffs filed an unopposed motion to file a first amended complaint. (Doc. 16.) The first amended complaint sought only to remove Defendant Highmark Blue Cross Blue Shield from this litigation. (*Id.*) The Court granted the unopposed motion. (Non-Document Order (July 8, 2024).) The controlling

complaint is now the first amended complaint filed at Doc. 16-1.[1] The remaining "Defendants" in this action are ArcelorMittal and the Benefits Committee.

On August 29, 2024, after briefing on the Motion to Dismiss closed, Plaintiffs filed a notice of supplemental authority. (Doc. 20.) Then, on October 23, 2024, Defendants filed a "notice of supplemental affidavit." (Doc. 21.) The next day, on October 24, 2024, Plaintiffs moved to strike the affidavit. (Doc. 22.) The Motion to Strike is fully briefed. (Docs. 23, 24.)

## II.     LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion tests whether the complaint meets this standard. To survive a Rule 12(b)(6) motion for failure to state a claim, the complaint must make out a plausible legal claim, meaning the complaint's factual allegations must be sufficient for a court "to draw the reasonable inference that the defendant is liable." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility does not require any specific probability of success, but it does demand "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

When courts evaluate whether a complaint makes out a plausible claim, they must accept all factual allegations as true. *Cates v. Crystal Clear Techs., LLC*, 874 F.3d 530, 534 (6th Cir. 2017) (quoting *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016)). Courts must also draw all reasonable inferences in favor of the plaintiff, and they must generally construe the

---

[1] An amended complaint generally moots a pending motion to dismiss. *See Crawford v. Tilley*, 15 F.4th 752, 759 (6th Cir. 2021). Yet a "district courts may exercise their discretion and apply a pending motion to dismiss to portions of an amended complaint that are substantially identical to the original complaint." (*Id.*) (citation omitted). Here, the first amended complaint does not revise any portion of the original complaint except to remove Defendant Highmark Blue Cross Blue Shield. Therefore, the Court considers the motion to dismiss in full.

complaint in the light most favorable to the plaintiff. *Id.* But courts do not accept legal conclusions or other conclusory allegations as true. *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014) (quoting *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 275-76 (6th Cir. 2010)). And courts need not make unwarranted factual inferences. *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006).

III. ANALYSIS

    A. **Plaintiffs' Motion to Strike**

The parties dispute whether the Court can consider three documents Defendants attached to their motion to dismiss: the purported COBRA notice allegedly sent to Plaintiffs (Doc. 14-2); a document titled 2022 Benefit Highlights (Doc. 14-3); and the purported Benefit Plan Document (Doc. 14-4). Plaintiffs contend the Court cannot consider Defendants' exhibits because they were neither integral to the complaint nor properly authenticated. (Doc. 17 at 193-94.)

After briefing on the Motion to Dismiss was completed, Plaintiffs filed a notice of supplemental authority. (Doc. 20.) Plaintiffs directed the Court to the recent Sixth Circuit opinion in *Moyer v. Gov't Employees Ins. Co.*, which provided further guidance to district courts regarding the review of documents not attached to complaints but used by defendants in motions to dismiss. 114 F.4th 563, 567-68 (6th Cir. 2024). Defendants later submitted an affidavit from Chrysta McIntire ("McIntire Affidavit"), the manager of employee benefits and human resources for ArcelorMittal, in an effort to authenticate the three documents attached to their Motion to Dismiss. (Doc. 21-1.) To be clear on the timeline, the affidavit was filed five months after the Motion to Dismiss, and nearly two months after Plaintiffs' notice of supplemental authority. Defendants did not seek leave of court to file the affidavit. They also did not explain the delay. Plaintiffs seek to strike the McIntire Affidavit because it was not put to the Court with the

Motion to Dismiss, was untimely (at best) and the result of prejudicial delay (at worst), and went beyond authentication of documents to include facts designed to dispute the complaint allegations. (Doc. 22.)

The affidavit is untimely. It comes five months after Defendants' initial motion and nearly two months after Plaintiffs noticed supplemental authority that challenged Defendants ability to put the documents before the Court. No motion for leave was filed let alone granted. Moreover, Plaintiffs dispute the authenticity of the attached documents. They also rightly point out the affidavit contains statements beyond authentication, including factual allegations directly contrary to certain complaint allegations. The Court will not consider the affidavit's disputed statements at this stage. *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010) (explaining that if a court considers matters outside of the pleadings, the court must treat the motion as one for summary judgment). It also will not consider disputed documents. *See Moyer*, 114 F.4th at 568 ("[a] district court should not rely on documents at the motion-to-dismiss stage if their authenticity is disputed"). For these reasons, the McIntire Affidavit is stricken in its entirety.

### B. ArcelorMittal as a Named Defendant

ERISA requires a plan administrator to provide notice to plan participants of adverse benefit determinations and termination of benefits, among other things. *See* 29 U.S.C. §§ 1133, 1166. A participant who does not receive proper notice may seek civil penalties. *See* 29 U.S.C. § 1132(c). However, "[i]t is well established that only plan administrators are liable for statutory penalties under § 1132(c)." *Gore v. El Paso Energy Corp Long Term Disability Plan*, 477 F.3d 833, 842 (6th Cir. 2007) (quoting *Caffey v. Unum Life Ins. Co.*, 302 F.3d 576, 584 (6th Cir. 2002)). That is, an employer cannot be liable for violations of ERISA's notice provisions, only

the plan administrator can. *Id.* Accordingly, the Sixth Circuit has held an employer is "not a proper party defendant in an action concerning benefits." *Id.* (quoting *Daniel v. Eaton Corp.*, 839 F.2d 263, 266 (6th Cir. 1988). But there is an exception: an employer may be a proper party defendant where "an employer is shown to control administration of the plan." *Id.*

ArcelorMittal argues it is an employer but not a plan administrator. (Doc. 14-1 at 53.) Instead, the Benefits Committee is the plan administrator. (*Id.* at 54.) To support its position, ArcelorMittal directs the Court to the following complaint allegation: the Benefits Committee, "if it exists, is the designated administrator" of the Benefits Plan. (Doc. 16-1 ¶ 4.) ArcelorMittal also relies on the plan documents.

To Plaintiffs, ArcelorMittal is a proper defendant because they pleaded in the alternative that ArcelorMittal is the plan administrator. (Doc. 17 at 195-96.) As for Count Three, Plaintiffs argue their Section 510 claim can be brought against an employer. (*Id.* at 197.)

Reviewing the arguments in reverse order, ArcelorMittal does not dispute Section 510 claims can be brought against an employer. (Doc. 19 at 222.) The Court finds this claim is properly brought against ArcelorMittal. *See Crawford v. TRW Auto. U.S. LLC*, 560 F.3d 607, 611 (6th Cir. 2009) (assessing Section 510 claim brought against employer). As to the remaining claims, pleading ArcelorMittal acted as a *de facto* plan administrator is sufficient to overcome ArcelorMittal's motion to dismiss it as a named defendant. (Doc. 17 at 195-96.)

C. **Exhaustion of Administrative Remedies**

The Sixth Circuit has consistently held "[t]he administrative scheme of ERISA requires a participant to exhaust his or her administrative remedies prior to commencing suit in federal court." *Constantino v. TRW, Inc.*, 13 F.3d 969, 974 (6th Cir. 1994) (quoting *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir. 1991)); *see also D.S.S. v. Prudential Ins.*

*Co. of Am.*, No. 21-5315, 2022 WL 95165 (6th Cir. Jan. 10, 2022) ("Our precedent is clear that the administrative scheme of ERISA requires a participant to exhaust his or her administrative remedies prior to commencing suit in federal court.") (citation omitted). The rule is subject to a few caveats. Relevant here, ERISA requires plan administrators to adopt claim procedures in accordance with ERISA. *See* 29 C.F.R. § 2560.503-1(h)(1) (2003) ("Every employee benefit plan shall establish and maintain a procedure by which a claimant shall have a reasonable opportunity to appeal an adverse benefit determination"); *see also* 29 U.S.C. § 1133. If a plan administrator does not establish or follow claim procedures pursuant to ERISA, "a claimant *shall be deemed to have exhausted the administrative remedies available under the plan*[.]" *Wallace v. Oakwood Healthcare, Inc.*, 954 F.3d 879, 887 (6th Cir. 2020) (emphasis in original) (quoting 29 C.F.R. 2560.503-1(l) (2003)). Thus, "for a plan fiduciary to avail itself of this Court's exhaustion requirement, its underlying plan document must—at minimum—detail its required internal appeal procedures." *Id.* at 888.

Defendants argue Counts One and Two must be dismissed because Plaintiffs did not exhaust their remedies, including the failure to make a claim. (Doc. 14-1 at 55.) Plaintiffs argue the claims survive because failure to exhaust is an affirmative defense not appropriately raised on a motion to dismiss, Counts One and Two are not claims for benefits and are instead statutory claims under ERISA not subject to exhaustion, and the Benefit Plan Document (if it is applicable to Plaintiffs) does not prescribe any claims procedure Plaintiffs failed to follow. (Doc. 17 at 197-98.)

As discussed above, the Benefit Plan Document is not properly before the Court. At this stage, the Court cannot determine what administrative procedures Defendants allege Plaintiffs were required to follow and if those procedures were in fact followed.

### D. Failure to State a Claim

Defendants argue Count One fails because Plaintiffs have not asserted a "claim" within the meaning of ERISA. (Doc. 14-1 at 60.) Further, Defendants argue Counts One, Four, and Five fail to state a claim because the Benefits Committee complied with ERISA's and COBRA's notice requirements. (*Id.* at 58.) Defendants also argue Count Two fails because Mr. Hacker does not provide regular service to ArcelorMittal. (*Id.* at 62.) Defendants argue Count Three fails because the Section 510 claim is based on speculation. (*Id.*) Finally, Defendants moved to dismiss Count Six because Plaintiffs had access to all controlling plan documents. (*Id.* at 64.)

#### 1. Count One

Defendants argue the termination of health coverage without a claim for benefits is not a termination or reduction of benefits within the meaning of ERISA. (*Id.* at 60.) That is, Defendants assert Plaintiffs never made a "claim," so there was no adverse benefit determination. (*Id.*)

Defendants cited no case law supporting its theory that courts dismiss claims relating to termination of benefits because a plaintiff made no "claim" within the meaning of ERISA. Under the relevant regulations, an "adverse benefits determination" is:

> A denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit, including any such denial, reduction, termination, or failure to provide or make payment that is based on a determination of a participant's or beneficiary's eligibility to participate in a plan, and including, with respect to group health plans, a denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit resulting from the application of any utilization review, as well as a failure to cover an item or service for which benefits are otherwise provided because it is determined to be experimental or investigational or not medically necessary or appropriate[.]

29 C.F.R. § 2560.503-1(m)(4)(i). As alleged, denying the prescription due to termination of coverage was an adverse benefits determination. And the termination of his coverage altogether

was an adverse benefits determination. Based on the complaint allegations, the Court cannot determine whether notice was appropriately given.

### 2. Count Two

Plaintiffs' claim their benefits were terminated in contravention of the Benefit Plan Document. (Doc. 16 at 186.) In moving to dismiss this Count, Defendants point to the Benefit Plan Document and its requirement that Mr. Hacker provide "regular service" to ArcelorMittal. (Doc. 14-1 at 62.) But again, because Defendants did not properly put the Benefit Plan Document before the Court, the Court cannot find that pleading allegations are inconsistent with the Benefit Plan Document.

### 3. Count Three

Plaintiffs allege ArcelorMittal terminated their benefits in violation of Section 510 of ERISA, 29 U.S.C. § 1140, because Mr. Hacker filed a workers' compensation claim. (Doc. 16-1 ¶¶ 53-59.) Section 1140 states:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan[.]

29 U.S.C. § 1140. Congress enacted this prohibition to prevent "unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights." *West v. Butler*, 621 F.2d 240, 245 (6th Cir. 1980). The Sixth Circuit has recognized two types of Section 510 claims:

> (1) an exercise or retaliation claim . . . where adverse action is taken because a participant availed herself of an ERISA right; and (2) an interference claim where adverse action is taken as interference with the attainment of a right under ERISA.

*Hamilton v. Starcom Mediavest Grp., Inc.*, 522 F.3d 623, 627-28 (6th Cir. 2008) (citations and quotations excluded). Under either, a plaintiff must show a specific intent to violate ERISA. *Schweitzer v. Teamsters Local 100*, 413 F.3d 533, 537 (6th Cir. 2005). In the absence of direct evidence, courts utilize the *Burdine* burden-shifting framework. *Hamilton*, 522 F.3d at 628 (citing *Texas Dep't of Comm'y Affairs v. Burdine*, 450 U.S. 248 (1981)). Thus, a plaintiff must first plead a *prima facie* case. The elements of an interference claim are: (1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled. *Smith v. Ameritech*, 129 F.3d 857, 865 (6th Cir. 1997). The elements of a retaliation claim are: (1) plaintiff was engaged in activity that ERISA protects; (2) plaintiff suffered an adverse employment action; and (3) a causal link exists between plaintiff's protected activity and the employer's adverse action. *Hamilton*, 522 F.3d at 628. Plaintiffs' complaint and opposition does not make clear which theory he is pursuing.

Plaintiffs plead Mr. Hacker worked at ArcelorMittal until an injury to his hand and wrist on November 2, 2020. (Doc. 16-1 ¶ 16.) Mr. Hacker applied for short-term disability and workers' compensation. (*Id.* ¶ 17.) On October 27, 2022, Mr. Hacker spoke with ArcelorMittal's human resource representatives regarding additional short-term disability. (*Id.* ¶ 21.) Shortly thereafter, on November 6, 2022, Mr. Hacker learned his medical coverage was terminated when he attempted to refill a prescription. (*Id.* ¶ 24.) At this stage, Plaintiffs plausibly pleaded ArcelorMittal engaged in prohibited employer conduct for purposes of interfering with Mr. Hacker's medical benefits. And these same allegations plausibly plead Plaintiffs engaged in protected ERISA activity which caused an adverse employment action.

The Sixth Circuit has held the "emphasis of a § 1140 action is to prevent persons and entities from taking actions which might cut off or interfere with a participant's ability to collect

present or future benefits or which punish a participant for exercising his or her rights under an employee benefit plan." *Hogan v. Jacobson*, 823 F.3d 872, 885 (6th Cir. 2016) (quoting *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1134 (7th Cir. 1992)).  The allegations plausibly plead ArcelorMittal violated those rights.

### 4. Counts Four and Five

Under COBRA, an employer must notify the plan administrator within 30 days of a qualifying event.  29 U.S.C. § 1166(a)(2).  The plan administrator must then notify the employee within 14 days of their rights to elect to continue coverage.  29 C.F.R. § 2590.606-4(b)(1).  The employee has 60 days to elect coverage.  29 U.S.C. § 1166(a)(3).  Courts in this circuit have consistently found notice sufficient where the plan administrator made a good faith effort to notify in a manner reasonably calculated to reach the employee.  *See Holford v. Exhibit Design Corp.*, 218 F.Supp.2d 901, 906 (W.D. Mich. 2002); *Nero v. Univ. Hosps. Mgmt. Servs. Org.*, No. 04-cv-1833, 2006 WL 2933957, 2006 U.S. Dist. LEXIS 76546, at *10 (N.D. Ohio Oct. 12, 2006).

During the COVID-19 pandemic, the Department of Labor modified these timelines.  *See Extension of Certain Timeframes for Employee Benefit Plans, Participants, and Beneficiaries Affected by the COVID-19 Outbreak*, 85 Fed. Reg. 26351-01 (May 4, 2020).  Plan administrators had until the earlier of one year from the qualifying event *or* 60 days after the end of the declared national emergency to provide a COBRA notice.  *Id.*  President Biden declared the COVID national emergency over on April 10, 2023.  *See* H.R.J. Res. 7, 118th Cong. (2023) (enacted).  Therefore, a COBRA notice must have been sent to Plaintiffs on or before 44 days following July 10, 2023.

By their own complaint allegations, plaintiffs can plead themselves out of federal court. *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012) ("sometimes the allegations in the complaint affirmatively show that the claim" is deficient or disallowed as a matter of law.). That is the case here. Plaintiffs only argument against dismissal of Counts Four and Five is the need to discover if notices were *actually* sent. But their complaint allegations recognize a termination of coverage notice dated November 23, 2022. What is more, they allege (and do not dispute) a copy of that notice was also sent to their attorney. Even if there is a question as to Plaintiffs' receipt of the November 23, 2022 COBRA notice, Plaintiffs allege a copy of the notice was provided to their designee after January 11, 2023, and, in reading the allegations with all inferences drawn in Plaintiffs' favor, before February 1, 2023, when Mr. Hacker obtained replacement medical insurance. (Doc. 16-1 ¶¶ 30-35.) The notice to their designee was within the revised notice period applicable at the time.

        5.      **Count Six**

ERISA requires plan administrators to create and distribute a "summary plan description" ("SPD"). 29 U.S.C. § 1021(a). ERISA requires SPDs include certain information. 29 U.S.C. § 1022(b). In Count Six of the first amended complaint, Plaintiffs claim the SPD sent to Plaintiffs' counsel—the 2022 Benefits Highlights for Shelby Hourly Employees of ArcelorMittal Tubular Products (Doc. 14-3)—if it even is the relevant and authentic SPD—violates § 1022(b). Plaintiffs plead, for instance, the SPD provided does not contain information relating to the "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." (Doc. 16-1 ¶ 81 (citing 29 U.S.C. § 1022(b)).) Plaintiffs requested relief is an order directing the plan administrator to prepare and issue an updated SPD that satisfies ERISA. (*Id.* ¶ 83.)

Defendants move to dismiss Count Six.  (Doc. 14-1 at 64.)  Defendants assert three arguments: (1) Plaintiffs lack standing to bring this claim in a representative capacity; (2) the documents Plaintiffs do have are "crucial" documents outlining the Benefit Plan and are sufficient; and (3) Plaintiffs cannot bring this claim because they have no damages.  (*Id.* at 64-66.)

As to standing, Plaintiffs explain in their opposition they did not intend to bring any representative action, but that any relief under this claim would affect other beneficiaries under the Benefit Plan.  (Doc. 17 at 203.)  Courts have entertained these types of claims without implicating representative actions.  *See Cmty. Ins. Co. v. Ohayon*, 73 F.Supp.2d 862, 869 (N.D. Ohio 1999) (enjoining plan administrator from issuing SPDs that failed to comply with ERISA).  The Court finds this explanation sufficient to negate Defendants' arguments as to standing.

As to Defendants "crucial" documents contention, the argument is not well-taken.  Defendants seem to argue that even if the SPD violated regulations, Plaintiffs' claim cannot proceed because they already have documents outlining the necessary information.  (Doc. 14-1 at 64-65.)  Defendants' reliance on *Engleson v. Unum Life Ins. Co. of Am.*, 723 F.3d 611 (6th Cir. 2013) does not support their argument here.  *Engleson* stands for the proposition that "[b]ecause SPDs lack controlling effect in the face of plan language to the contrary, we do not feel compelled to read the regulation in a manner that requires sweeping, comprehensive disclosure[.]"  *Id.* at 620.  The Sixth Circuit explained that SPDs needed a certain flexibility given their nature and do not need to "include every detail of the thing it summarizes."  *Id.* at 621 (quoting *Lipker v. AK Steel Corp.*, 698 F.3d 923 (6th Cir. 2012)).  But here, Plaintiffs argue the SPD and other documents do not contain information the governing regulations specifically require.  Because regulations require at least some disclosure, this claim can proceed.

Defendants also argue Plaintiffs' lack of damages defeats their claim. (Doc. 14-1 at 65.) Without an identifiable injury, Plaintiffs cannot recover "substantive damages." (*Id.*)  In reviewing the documents before it, Plaintiffs' first amended complaint requested equitable relief (Doc. 16-1 ¶ 83), not "substantive damages," as Defendants contend.  The absence of a pleaded injury is not fatal to a request for equitable relief.  "[A] plan participant or beneficiary may have Article III standing to obtain injunctive relief, pursuant to § 1132(a)(3), related to ERISA's disclosure and fiduciary duty requirements without a showing of individual harm." *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 609 (6th Cir. 2007).  Defendants do not cite any precedential authority or ERISA provision to the contrary.

## IV.  CONCLUSION

For the reasons above, Defendants' Motion to Dismiss (Doc. 14) is GRANTED in part and DENIED in part.  Counts Four and Five are DISMISSED.  All other claims will proceed.  Plaintiffs' Motion to Strike the McIntyre Affidavit (Doc. 22) is GRANTED.

**IT IS SO ORDERED.**

Date:   March 26, 2025

_____
BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE